**LEWIS BRISBOIS BISGAARD & SMITH** LLP
CHRISTOPHER J. BAKES, SB# 99266
ANDREW D. BLUTH, SB# 232387
RYAN MATTHEWS, SB# 311674
2020 West El Camino Avenue, Suite 700
Sacramento, California 95833
Telephone: 916.564.5400
Facsimile: 916.564.5444

Attorneys for Storz Management Company and
Storz Realty, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| STORZ MANAGEMENT COMPANY, a California corporation, and STORZ REALTY, INC.<br><br>    Plaintiff,<br><br>    vs.<br><br>ANDREW CAREY, an individual, and MARK WEINER, an individual,<br><br>    Defendant. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>1. **DEFEND TRADE SECRETS ACT**<br>2. **BREACH OF FIDUCIARY DUTY**<br>3. **BREACH OF CONTRACT**<br>4. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>5. **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIP**<br>6. **FRAUD**<br>7. **UNFAIR COMPETITION**<br><br>Trial Date:        None Set |

Plaintiff STORZ MANAGEMENT COMPANY ("Plaintiff"), a California corporation, by

its undersigned attorney, for its Complaint against Defendants ANDREW CAREY, an individual,

and MARK WEINER, an individual, alleges as follows:

<u>PRELIMINARY STATEMENT</u>

1.    This action arises from an unlawful conspiracy among the Defendants to misappropriate

Plaintiff's valuable trade secrets, other confidential information, and goodwill so that they could

form a competing company, Monolith, and unlawfully gain an unfair competitive advantage in the

4839-9642-2746.1

1    market place.

2    2.   The breaches and other wrongful conduct alleged herein are of the worst kind, carried out

3    by Plaintiff's top executives and most trusted (and powerful) employees.  Defendants held the top

4    managerial positions for Plaintiff Storz Management Company ("SMC").  Defendant Carey was

5    Chief Executive Officer ("CEO"), and Mr. Weiner was Chief Financial Officer ("CFO") and Chief

6    Operating Officer ("COO").  Defendants led a team of dedicated employees at Plaintiff Storz

7    Management Company's headquarters in Orangevale, California, while also overseeing and

8    directing (up to a point in time not relevant to the claims made in this complaint) Storz Realty,

9    Inc., an affiliate company of Storz Management Company.  (Storz Management Company is

10   referred to as "Storz Management."  Storz Realty, Inc., is referred to as "Storz Realty."  All

11   references to "Plaintiff" shall be deemed to refer to "Storz Management," unless otherwise

12   specified in context.)

13   3.   Defendants earned handsome salaries from Plaintiff and were repeatedly paid significant

14   bonuses.  Yet, unbeknownst to Plaintiff,  Defendants abandoned their fiduciary and contractual

15   duties to Plaintiff by engaging in a course of conduct designed to enrich themselves at Plaintiff's

16   expense with the ultimate goal of creating their own competing company, and using Plaintiff's

17   trade secrets, property, customers, and employees to do so, launching their competing concern

18   prior to their eventual terminations for cause on unrelated grounds arising out of their issuance of a

19   securities offering in violation of various laws, including the federal securities laws.

20   4.   By the time Plaintiff discovered Defendants' wrongdoing, Defendants had already begun

21   soliciting Plaintiff's customers (also referred to herein as "owner-principals") and seeking

22   investors to support their new joint venture, Monolith LLC ("Monolith").  Plaintiff has made

23   multiple efforts to persuade Defendants to cease and desist their anti-competitive, tortious and

24   unlawful conduct, but Defendants have made it clear that they have no intention of doing so.

25   5.   Plaintiff now asserts claims for (1) misappropriation of trade secrets under the Defend

26   Trade Secrets Act ("DTSA"), 18 U.S.C. 1836 *et seq.*; (2) misappropriation of trade secrets under

27   the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code 3426.1 *et seq.*; (3) breach

28   of fiduciary duty; (4) breach of contract; (5) breach of the implied covenant of good faith and fair

1  dealing; (6) intentional interference with contractual relationships; (7) fraud, and (8) unfair,

2  unlawful, and fraudulent conduct under the California Unfair Competition Law ("UCL"), Cal.

3  Bus. & Prof. Code 17200, *et seq.*

4                                        THE PARTIES

5      6.  At all relevant times, Plaintiff Storz Management was a California corporation in good

6  standing with its principal place of business in the County of Sacramento, California.

7      7.  At all relevant times, Plaintiff Storz Realty was a California corporation in good standing

8  with its principal place of business in the County of Sacramento, California.

9      8.  Defendant ANDREW CAREY ("Mr. Carey") is an individual who at all relevant times has

10  resided in the state of California.  Mr. Carey was Plaintiff's at-will employee beginning in 2012,

11  on payment terms and conditions contained in a detailed employment contract.  Mr. Carey

12  executed a further Employment Agreement on March 18, 2016 and agreed to serve as Plaintiff's

13  CEO, also on an at-will basis.  A true and correct copy of this agreement is attached hereto as

14  Exhibit A, and is incorporated by reference.

15      9.  Defendant MARK WEINER ("Mr. Weiner") is an individual who at all relevant times has

16  resided in the state of California.  Mr. Weiner was Plaintiff's at-will employee beginning in 2013,

17  on payment terms and conditions contained in a detailed employment contract.  Mr. Weiner

18  executed a further Employment Agreement on November 1, 2016, and agreed to serve as

19  Plaintiff's CFO and COO, also on an at-will basis.  A true and correct copy of this agreement is

20  attached hereto as Exhibit B, and is incorporated by reference.

21      10. Plaintiff is informed and believes that at all times herein mentioned in this Complaint,

22  Defendants have pursued, or joined in the pursuit of, a common course of conduct and acted in

23  concert with and conspired with one another, in furtherance of their common plan or scheme.

24  Plaintiff is informed that at all times mentioned in this Complaint, in addition to the wrongful

25  conduct alleged herein as giving rise to primary liability, Defendants also aided and abetted each

26  other in committing the wrongful acts alleged herein.

27      11. Plaintiff is informed and believes that at all times mentioned in this Complaint,

28  Defendants, and each of them, were partners, engaging in a joint venture, agents, employees, alter

LEWIS
BRISBOIS

4839-9642-2746.1                                  3

1  egos, and representatives of each other in doing the things alleged and, in doing so, were acting

2  within the scope of their respective authorities as agents, employees, and representatives, and are

3  jointly and severally liable to Plaintiff.

4  <u>PERSONAL JURISDICTION AND VENUE</u>

5  12. Federal Rule of Civil Procedure 4 directs every federal district court to follow the law on

6  personal jurisdiction that is in force in the state courts where the federal court is located.  Personal

7  jurisdiction is proper under California state law because both individuals are and were at all times

8  relevant to this Complaint residents of California.

9  13. Venue is proper because Defendants' wrongful conduct, including the misappropriation of

10  trade secrets, occurred in Sacramento County and the contracts underlying this litigation were

11  entered into in Sacramento County.

12  <u>SUBJECT MATTER JURISDICTION</u>

13  14. This Court has subject matter jurisdiction over this action pursuant to  28 U.S.C. § 1331.

14  Plaintiff brings this action under the federal Defend Trade Secrets Act. (18 U.S.C. § 1836, et seq.)

15  which gives federal courts original jurisdiction over causes of action brought thereunder.  (18

16  U.S.C. § 1836(c).)

17  15. The Court has supplemental jurisdiction over Plaintiff's remaining state law causes of

18  action pursuant to 28 U.S.C. § 1367 because they are so related to the Defend Trade Secrets action

19  as to be part of the same case or controversy.

20  <u>GENERAL ALLEGATIONS</u>

21  16. Plaintiff provides RV Park and Mobile Home Park management services.

22  17. At all times relevant to this Complaint prior to his termination, Mr. Carey acted as the

23  CEO of Plaintiff, the highest-ranking executive within the company.

24  18. At all times relevant to this Complaint prior to his termination, Mr. Weiner acted as the

25  CFO and COO of Plaintiff.  Mr. Weiner was the second-highest ranking executive within the

26  company and reported directly to Mr. Carey.

27  19. At all times relevant to this Complaint prior to his terminations, Mr. Carey performed

28  services for Storz Realty as a real estate broker licensed under the applicable laws of the state of

LEWIS
BRISBOIS

4839-9642-2746.1                                     4

1  California.  Mr. Carey was compensated primarily by commissions on sales of properties sold

2  through and by Storz Realty.  He was also an officer of Storz Realty.

3      20. At all times relevant to this Complaint prior to his termination, Mr. Weiner provided

4  services to Storz Realty as a mobile home dealer licensed under the applicable laws of the state of

5  California.  Mr. Weiner was compensated by a fixed fee on obtaining each Certificate of

6  Occupancy.  He too was an officer of Storz Realty.

7          **Defendants' Self Dealing**

8      21. Defendants' executive positions with Plaintiff created a fiduciary duty owed by Defendants

9  to Plaintiff and to each of the individual property owners whose parks Plaintiff managed through

10 Defendants.  Given the management role Plaintiff served for its owner-principals, Defendants

11 therefore also owed derivative duties to those owner-principals.  The relationship between Plaintiff

12 and the owner-principals was fiduciary in nature.  Each such park owner depended upon Plaintiff

13 to manage all aspects of each such park's day-to-day operations, the pricing of rents for the "pads"

14 on which the homeowners' mobile homes were placed, the collection of rents, cost and

15 administration of park maintenance, market rent analyses, and all other aspects of park

16 management for owner-principals who by their retention of Plaintiff were choosing to delegate

17 these responsibilities to Plaintiff as their management agent.  Defendants as Plaintiff's topmost

18 executives had derivative fiduciary duties to both the owner-principals and to Plaintiff.

19     22. As part of the Employment Agreements Defendants entered into with Plaintiff, Defendants

20 signed and agreed to  a "Confidential Information and Invention Assignment Agreement," an

21 appendix to each Defendant's Employment Agreement and incorporated therein.  Sections 2(c)

22 and 2(d) of that Agreement explicitly obligate Defendants not to use Plaintiff's confidential

23 information to solicit customers or employees even following the cessation of their employment

24 with Plaintiff.

25     23. Commencing in 2016 and accelerating in 2017, Plaintiff is informed and on that basis

26 believes that Defendants entered into a conspiracy to abandon their fiduciary and contractual

27 duties to Plaintiff by misappropriating Plaintiff's trade secrets and soliciting Plaintiff's clients,

28 which both preceded their terminations and is still ongoing.  These actions violate federal and state

LEWIS
BRISBOIS

4839-9642-2746.1                                    5

1   law, multiple sections of Defendants' Employment Agreements including, but not limited to,

2   multiple provisions of sections 2 and 3 of those Agreements, and violate the duties Defendants

3   owed to Plaintiff and Plaintiff's customers, the owner-principals.

4      24. Plaintiff has learned that Defendants were engaged in self-dealing to benefit themselves

5   individually at the expense of Plaintiff and Plaintiff's owner-principals.  As an example,

6   Defendants, while employed by Plaintiff were involved in the sale of a mobile home park located

7   at 3390 Taylor Road in Loomis, California, in which a fee-managed park was placed on the

8   market, using Defendant Carey, through Storz Realty, as the broker-agent retained for the purpose

9   of marketing the property.  The park was eventually sold to an entity named LOOMIS MHV,

10  LLC.  The property was managed by Plaintiff so Defendants knew specific details about the

11  property's operations and ownership.  The sales price for the transaction was $1,495,000, most of

12  which was financed.  As the seller's agent in that transaction, Mr. Carey received a sales

13  commission of $44,900.

14     25. Mr. Carey caused the $1,495,000 offer to be accepted despite the existence of other,

15  higher, and all-cash offers that would have been more desirable to the seller, to whom Plaintiff's

16  operating unit Storz Realty and Defendants owed various fiduciary duties.  Contrary to his

17  fiduciary duty to the seller, Mr. Carey did not fully disclose the superior nature of those offers to

18  the seller.

19     26. Further contrary to Defendants' fiduciary duty to the seller and their separate duty to

20  Plaintiff Storz Realty, Plaintiff learned following their terminations that Mr. Carey and Mr.

21  Weiner actually own and control the buyer, LOOMIS MHV, LLC.  Neither Mr. Carey nor Mr.

22  Weiner disclosed to Plaintiff Storz Management or Plaintiff Storz Realty that they were the

23  principal owners of LOOMIS MHV, LLC.  By this deception, they were able to manipulate the

24  transaction to force their low offer to be accepted over the more desirable, higher, all-cash offers

25  from better-qualified buyers, all while failing to disclose their own three separate conflicting

26  interests as (1) buyers of the property (Mr. Carey and Mr. Weiner), (2) the transaction broker (Mr.

27  Carey), (3) Storz Realty's seller's agent (Mr. Carey), and (4) joint recipients of commission

28  compensation in violation of law (licensed broker Mr. Carey split his commission with unlicensed

LEWIS
BRISBOIS

1    Mr. Weiner).  Defendants' "split" of the commission payable to Mr. Carey violated California

2    Business and Professions Code section 10137, which prohibits the sharing of a brokerage

3    commission with someone who is not a licensed within the meaning of section 10137.  Mr.

4    Weiner is not licensed within the meaning of this statute.

5        27. In addition to manipulating the transaction itself, Defendants negotiated a 'sweetheart'

6    management deal.  Plaintiff's minimum monthly rate for Mobile Home Park management services

7    was $1,750 per month.  As CEO, Mr. Carey was authorized to reduce that rate to $1,500 per

8    month as a special accommodation.  In this particular transaction, in which the buyer was

9    surreptitiously owned and controlled by Defendants, Plaintiff's rate was unilaterally set by

10    Defendants at $1,340 per month—a uniquely low, money-losing rate.

11        **Defendants Deliberately Neglect Their Employment To Compete Against Plaintiff**

12        28. In March 2016, Plaintiff acquired three mobile home parks in the city of Bakersfield,

13    California.  The parks were deemed to be properties in excellent condition, awaiting only further

14    development through the acquisition of new mobile homes, which would in turn be placed onto

15    their respective pads and readied for sale by Plaintiff Storz Realty and occupancy by eventual

16    buyers.

17        29. Defendant Weiner was charged with the responsibility of readying these units for sale.

18    While he repeatedly indicated he had done so, Plaintiff's board members conducted a surprise

19    inspection in September 2017 which revealed that Mr. Weiner had taken few steps to prepare the

20    homes for sale or occupancy.  In some homes, there was no running water or other utilities, and no

21    construction finish work had occurred.  There were no carports, no awnings, no skirting, and no

22    concrete finish work creating walkways to front doors.  Furthermore, the parks themselves – and

23    one in particular, Smoke Tree Mobile Estates – had been allowed to severely deteriorate since

24    Plaintiff's relatively recent acquisition in March 2016.

25        30. Plaintiff issued a detailed warning to Defendants that these deficiencies needed to be

26    promptly rectified.  Roughly six weeks later, Defendants represented that the parks had been

27    brought into compliance with Storz' high standards and that the homes and sites were ready for

28    sale.  Defendant Weiner submitted written documentation to Plaintiff verifying the ready-for-sale

LEWIS
BRISBOIS

1    status of the parks.

2        31. Another surprise inspection by Plaintiff's board members revealed that Defendants'

3    representations were again entirely false.  Plaintiff is informed and on that basis believes that

4    Defendants were by this time actively working in support of their competing business and were

5    just as actively and comprehensively disregarding their duties and responsibilities as Plaintiff's

6    executive employees.

7        **Defendants Mislead Investors About New Venture to Compete with Plaintiff**

8        32. In or around November, 2017, Defendants published  an investment circular on behalf of

9    their newly created entity, Monolith.  The circular is attached hereto as Exhibit C, incorporated by

10   reference, and referred to in this Complaint as the "Monolith Circular."

11       33. That name "Monolith" was reflective of a corporate entity that Defendants registered with

12   the California Secretary of State during the time of their employment with Plaintiff, shown both

13   by applicable records of the Secretary of State and by Defendants' design and placement of a

14   website advertising its competing services, all occurring during October 2017, well prior to

15   Defendants' terminations on December 1, 2017.  The URL for the website was and is

16   http://www.monolithparks.com/.

17       34. The Monolith Circular advertised that Monolith "ha[d] secured the exclusive rights to

18   purchase the portfolio of [Mobile Home Parks] in an 'off market' deal."  Plaintiff managed two of

19   the three parks in this "portfolio."

20       35. The Monolith Circular repeatedly referred to Plaintiff as an "affiliate" of Monolith" and

21   prominently featured Plaintiff's name and logo.  It falsely referred to Plaintiff as Monolith's

22   "affiliate management company" and stated that "Monolith's affiliate management company

23   currently operates two of the three [Mobile Home Parks], so has intimate knowledge of the

24   properties and their respective upside opportunities."  The circular further boasted that the parks

25   were being operated non-competitively to their owners' disadvantage, meaning the investment was

26   particularly attractive because this meant the parks themselves were underpriced.  A recipient of

27   the circular could reasonably rely on Defendants' intended representation that Storz Management

28   Company, a reputable force within the mobile home park management industry, stood behind the

1    offering, assured its safety, and in all relevant respects made the investment safer and less risky.

2    Meanwhile, Plaintiff's owner-principals whose properties were contained in this "portfolio" would

3    question Plaintiff's own management of these properties where Plaintiff's own CEO and

4    CFO/COO were promoting them in the Monolith Circular as poorly managed – which operates as

5    a further incongruity because Defendants were themselves charged with competent and fiduciary

6    operation of these same properties.

7         36. In truth, Plaintiff is not and never has been an "affiliate" of Monolith and had no

8    knowledge of or participation in the preparation of the Monolith Circular, and certainly no

9    knowledge that parks it managed and to whom it owed various fiduciary duties were being billed

10   by its chief executives as poorly managed and under-performing – by the very executives charged

11   with their competent management.  Defendants at no point disclosed this offering or its contents to

12   Plaintiff.  Plaintiff concluded that the falsehoods were material and risked misleading potential

13   investors, and further concluded that Defendants' were deliberately managing these particular

14   parks in order to represent rents as below market and the parks themselves as therefore

15   undervalued and a "bargain."  Upon acquisition of the parks once recipients invested, Defendants

16   insinuated in the Monolith Circular that they would raise rents to enhance the parks' value and the

17   eventual return on investment, which in sum and substance was an admission that they had kept

18   rents low precisely to produce this very outcome, breaching their fiduciary duties to both the park

19   owners and to Plaintiff.

20        37. As a result of Defendants' wrongdoing, on December 1, 2017, Plaintiff sent letters to Mr.

21   Carey and Mr. Weiner informing them that Plaintiff was terminating their employment for cause.

22   That termination was based on violations of sections 2.2(a), 2.4, and appendix paragraphs 2(a) and

23   2(b) of Defendants' respective Employment Agreements.

24        38. Those termination letters reiterated Defendants' post-termination obligations with respect

25   to confidential information and trade secrets.

26        **Defendants Remove Their Company Property**

27        39. Paragraph 3 of Appendix A to Defendants' Employment Agreements required Defendants

28   to return all property belonging to Plaintiff.

40. Following Defendants' termination, Defendants conspired with a now-former Storz Management employee to nearly strip bare their former offices of all files, many of which contain Plaintiff's confidential information and trade secrets, including customer lists, the financial terms on the basis of which the mobile home park properties were managed, and all manner of other information Plaintiff used in its daily operations, including to conduct profitability assessments to assess whether the parks were being properly managed.  Defendants were Plaintiff's top executives and charged with safeguarding Plaintiff's proprietary and confidential information, including to account for it upon their departure or termination.  Instead, Defendants caused to be removed all or nearly all such files, failed to account for the files they removed, and failed to provide an inventory of removed files.  This means that the very files that used to occupy Defendants' respective offices and which they supposedly used in their conduct of business on Plaintiff's behalf have now been removed.  Furthermore, Defendants partially accomplished this by enticing company subordinates to assist, including by using the pretense that the files were "personal."  One of Plaintiff's employees was able to intercept some of these files, which included electronic data storage devices, and was able to establish that they did not, in fact, contain Defendants' "personal" information, but rather were full of Plaintiff's confidential and proprietary information regarding parks under management, pricing terms, and all other information uniquely held by Plaintiff as agent operator of the parks it manages for its customers, the owner-principals.

41. Defendants have refused to return those files or in any way account for them, and continue to misappropriate and use the confidential information and trade secrets contained therein for their own benefit, by soliciting the owner-principals to come over to Monolith, their directly competing enterprise – which they would not have been able to do without their long misuse of Plaintiff as platform to create then launch their new business, further achieved by their removal and use of Plaintiff's own records in support of their long-planned scheme.

42. Defendants also refused to return a laptop that is the property of Plaintiff.  That laptop also contained files constituting confidential information and trade secrets of Plaintiff.  For weeks after their termination, Defendants refused to return the laptop, finally doing so only under pointed threat of very specific legal consequences.

1  43. Defendants continue to use Plaintiff's confidential information and trade secrets to operate

2  their new competing business, in violation of federal and state law, their Employment

3  Agreements, and their fiduciary duties to Plaintiff.

4  44. Immediately upon Defendants' terminations—within two days—Plaintiff began receiving

5  requests from parks under its management to transfer their business to Defendants' new venture.

6  Defendants have successfully solicited multiple customers, who have migrated from using

7  Plaintiff's park management services to those of Defendants.  Plaintiff is informed and on that

8  basis believes Defendants had been planning their new competing venture long prior to their

9  termination allowing them to solicit and steal Plaintiff's owner-principals immediately upon their

10  termination, all while neglecting their own duties as Plaintiff's top executives.

11  **Defendants Solicit Employees**

12  45. Defendants solicited Plaintiff's employees in violation of their contracts, and did so by

13  misuse of their knowledge about Plaintiff's employees' terms of employment.  At least two of

14  Plaintiff's employees are now employed by Defendants.  Defendants also attempted to solicit

15  another employee on the inducement that she was being underpaid by Plaintiff.  However, it was

16  Defendants who while employed by Plaintiff set these salary structures.  To return to these same

17  employees and attack these same salary structures is a form of unconscionability, in the misuse of

18  confidential information, feigning superior knowledge, and then slandering Plaintiff for

19  underpayment when it was they who had set the salaries.

20  46. Defendants also solicited prior subordinates to surreptitiously remove trade secrets and

21  proprietary information, and to otherwise strip bare their offices of any information pertaining to

22  the operation of Plaintiff's business.  Defendants further solicited a prior subordinate to alter an

23  owner-principal's banking records, to expedite what they anticipated would be the eventual

24  termination of Plaintiff by that owner-principal and retention of Defendants' new management

25  company.

26  **FIRST CAUSE OF ACTION**

27  **(Defend Trade Secrets Act)**

28  47. Plaintiff hereby re-alleges and incorporates the allegations of the preceding paragraphs as

1  though fully set forth herein.

2      48. Plaintiff owns and possesses certain confidential, proprietary and trade secret information

3  including, but not limited to, customer contracts and pricing data, management protocols, strategic

4  plans, and customer lists.

5      49. This confidential, proprietary, and trade secret information relates to services rendered and

6  used, sold, or intended to be used and sold in interstate commerce.

7      50. Plaintiff has taken reasonable measures to keep such information secret and confidential

8  by, among other things, limiting access to its trade secret information, and requiring key

9  employees, including Defendants, to separately sign agreements relating to such information.

10  Defendants, as the CEO, CFO, and COO, knew and understood that by their takings they were

11  paralyzing the company, while simultaneously engaging in a raid on its owner-principals, all by

12  use of the information they gained as CEO, CFO, and COO.

13      51. This confidential, proprietary, and trade secret information derives independent value, both

14  actual and potential, from not being generally known to other persons or businesses who could

15  obtain economic value from its disclosure or use.

16      52. Defendants have misappropriated Plaintiff's trade secret information in the improper and

17  unlawful manner alleged herein.  Prior to their termination, Defendants misappropriated the trade

18  secret information by stripping their offices of all files. They further misappropriated the

19  information by using it to set up a new business, Monolith, in direct competition with Plaintiff.

20  Monolith's very existence is owed to that trade secret information, as it is only able to compete in

21  the marketplace, with little to no lead time, because of the theft of information by Defendants.

22  Defendants' use of Plaintiff's trade secret information is ongoing.

23      53. As a direct and proximate result of Defendants' conduct as alleged herein, Plaintiff has

24  suffered damages in an amount to be proven at trial but which exceeds hundreds of thousands of

25  dollars.

26      54. Defendants' misappropriation of Plaintiff's trade secret information was willful and

27  malicious, further entitling Plaintiff to recover exemplary damages and its attorneys' fees and

28  costs.

55. On information and belief, if Defendants' conduct is not remedied, and if Defendants are not enjoined, Defendants will continue to misappropriate, disclose, and use for their own benefit and to Plaintiff's detriment Plaintiff's trade secret information.

56. Because Plaintiff's remedy at law is inadequate, Plaintiff seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests. Injunctive relief is necessary to eliminate the commercial advantage that otherwise would be derived from Defendants' continued misappropriation of Plaintiff's trade secret information.

## SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty)

57. Plaintiff hereby re-alleges and incorporates the allegations of the preceding paragraphs as though fully set forth herein.

58. As the highest executive officers of Plaintiff, Defendants owed Plaintiff their undivided loyalty and were obligated to act with the utmost good faith, and in the best interest of Plaintiff. Plaintiff, in turn, was entitled to place its trust and confidence in Defendants, and to expect them to act with the utmost good faith toward Plaintiff in carrying out Plaintiff's business. Plaintiff relied on Defendants' loyalty and integrity in their faithful performance of their duties and responsibilities.

59. During the course of their employment with Plaintiff, Defendants breached their duty of loyalty by starting a competing business, Monolith, to directly compete against Defendant. They did so using Plaintiff's confidential, proprietary, and trade secret information for their own benefit and to Plaintiff's detriment.

60. Defendants further breached their fiduciary duty through their conduct during the sale of the Mobile Home Park in Loomis, California as previously alleged in Paragraphs 21 through 27 of this Complaint, including self-dealing and failing to fulfill their disclosure obligations.

61. Defendants acted willfully and maliciously in breaching their fiduciary duty to Plaintiff as described above.

62. By reason of the acts and conduct of Defendants, Plaintiff is entitled to compensatory and

1   punitive damages in an amount to be determined at trial but which exceeds hundreds of thousands

2   of dollars.

3         63. As a result of their flagrant breaches of fiduciary duty during their employment with

4   Plaintiff, Defendants must disgorge all ill-gotten profits, including all profits traceable to their

5   faithless misconduct, the exact amount to be determined at trial.

6                         **THIRD CAUSE OF ACTION**

7                           **(Breach of Contract)**

8         64. Plaintiff hereby re-alleges and incorporates the allegations of the preceding paragraphs as

9   though fully set forth herein.

10         65. As part of their Employment Agreements, Mr. Carey and Mr. Weiner signed the

11   Confidential Information and Invention Agreement, which was incorporated into their

12   Employment Agreements. That Agreement explicitly bound Defendants to use any confidential

13   information of Plaintiff's solely for Plaintiff's benefit or solicit Plaintiff's employees for hire.

14         66. As previously alleged herein, Defendants have misappropriated Plaintiff's confidential,

15   proprietary, and trade secret information for Defendants' benefit and to harm Plaintiff.

16   Defendants have also misappropriated employee salary information, using it to slander Plaintiff

17   and lure employees to them.

18         67. The misappropriation of trade secrets, as described herein, constitutes a willful breach of

19   Defendants' contractual duty not to use any of Plaintiff's confidential information and trade

20   secrets.

21         68. Plaintiff has fully performed its duties and obligations to Defendants under their respective

22   Employment Agreements.

23         69. The solicitation of employees, as described herein, constitutes a willful breach of

24   Defendants' contractual duty not to do so.

25         70. As a direct and proximate result of Defendants' breaches, Defendants have damaged

26   Plaintiff in an amount to be determined by the Court, together with interests, costs, and attorneys'

27   fees.

28

## FOURTH CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

71. Plaintiff hereby re-alleges and incorporates the allegations of the preceding paragraphs as though fully set forth herein.

72. Plaintiff and Defendants were parties to valid employment contracts.

73. Plaintiff performed all of its duties under those contracts.

74. Through the conduct alleged in this Complaint, including setting up a new business in direct competition with Plaintiff and misappropriating Defendants' confidential, proprietary, and trade secret information, and soliciting Plaintiff's employees to commit acts of misconduct, or to accept their offers of employment, Defendants have unfairly interfered with Plaintiff's right to receive the benefit of those contracts, and thereby breached the implied covenant of good faith and fair dealing.

75. As a direct and proximate result of Defendants' breach, Plaintiff has been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (Intentional Interference with Contractual Relations)

76. Plaintiff hereby re-alleges and incorporates the allegations of the preceding paragraphs as though fully set forth herein.

77. Through their employment with Plaintiff, Defendants obtained confidential knowledge regarding all customer contracts between Plaintiff and its clients.

78. As previously alleged in this Complaint, Defendants conspired to establish a new business in direct competition with Plaintiff.

79. In the course of establishing that business, Defendants misappropriated Plaintiff's confidential, proprietary, and trade secret information in order to solicit Plaintiff's clients and employees to migrate their business to Defendants' new entity.

80. Defendants undertook this conduct with full knowledge of Plaintiff's  contractual agreements with their clients and employees.

81. As a direct and proximate result of Defendant's intentional interference in Plaintiff's

1  contractual relationships with their clients and employees, Plaintiff has suffered damages in an

2  amount to be determined by the Court, with reasonable costs and attorneys' fees.

3  ## SIXTH CAUSE OF ACTION

4  **(Fraud)**

5  82. Plaintiff hereby re-alleges and incorporates the allegations of the preceding paragraphs as

6  though fully set forth herein.

7  83. As of the date of Defendants' executions of their Employment Agreements (Mr. Carey on

8  March 18, 2016, and Mr. Weiner on November 1, 2016), Plaintiff is informed and on that basis

9  believes that Defendants had long been actively involved in using Plaintiff as a platform for the

10  design and creation of their own competing business, while they deliberately induced Plaintiff to

11  agree to new terms of employment, all while Defendants were engaging in specific conduct that, if

12  known to Plaintiff, would have resulted in immediate severance and certainly the withdrawal of

13  any pending offers of employment.

14  84. By May 25, 2016, Defendants had already formed the idea to surreptitiously purchase the

15  Loomis property, a scheme that would include their actively discouraging any competing offers,

16  and certainly superior ones.  Existing documentation shows that Defendants formed the acquiring

17  entity on May 25, 2016.  The sale to Defendants' entity closed on July 20, 2016.  At no point did

18  Defendants disclose to Plaintiff that they were the purchasers behind this acquisition.

19  85. In March 2016, Plaintiff acquired the Bakersfield properties, which Defendants actively

20  neglected, then provided false information about the properties' readiness to support individual

21  mobile home sales, and provided still more false information when their false representations were

22  exposed.

23  86. By concealing their true activities, Defendants led Plaintiff to believe that they were

24  prepared to act as responsible executives with fiduciary duties both to Plaintiff and to Plaintiff's

25  principal-owners of the fee-managed parks.  At the time they executed their agreements,

26  Defendants knew they were already withholding material information that if known would have

27  resulted in Plaintiff's withdrawal of the agreements and their termination.

28  87. By their material failures to disclose the truth, when they had a fiduciary duty to do so,

Defendants engaged in fraud.

88. As a result of Defendants' fraud, Defendants are liable for damages to Plaintiff Storz Management in the amount it will take to hire and compensate replacement executives, to compensate Plaintiff Storz Management for any decline in value as a going concern by virtue of Defendants' frauds, breaches, torts and misconduct, and to Plaintiff Storz Realty in the amount it may take to make the Loomis seller whole by compensating that seller in an amount that will equal the actual best offer.

## SEVENTH CAUSE OF ACTION

### (Unfair Competition, Cal. Bus. & Prof. Code 17200, *et seq.*)

89. Plaintiff hereby re-alleges and incorporates the allegations of the preceding paragraphs as though fully set forth herein.

90. California's Unfair Competition Law provides equitable remedies against Defendants who engage in unlawful, unfair, or fraudulent business practices.

91. As set forth in this Complaint, Defendants have acted unfairly and unlawfully towards Plaintiff by breaching their contractual and fiduciary duties to Plaintiff and by misappropriating Plaintiff's confidential, proprietary, and trade secret information.

92. Defendants undertook this unfair and unlawful conduct while being employed and compensated by Plaintiff. In particular, Defendants worked to establish a business in direct competition with Plaintiff while still employed by Plaintiff.

93. Defendants have refused to cease and desist their ongoing unfair and unlawful conduct, which has caused and threatens to continue to cause Plaintiff irreparable harm.

94. As a result of Defendants' unfair and unlawful conduct, Plaintiff requests that the Court order Defendants to disgorge all profits Defendants earned through the unfairly competitive activities of Monolith.  Additionally, Plaintiff requests that Defendants be enjoined from any further anti-competitive conduct.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Storz Management Company respectfully demands judgment in its favor and against Defendants Andrew Carey and Mark Weiner as follows:

1.    On Counts One and Two against all Defendants:

      a.    Compensatory damages for actual loss and unjust enrichment caused by misappropriation of Plaintiff's trade secret information;

      b.    Exemplary damages equal to two times the amount of the compensatory damages awarded;

      c.    An award of Plaintiff's reasonable attorneys' fees and costs, and

      d.    A preliminary and permanent injunction (i) prohibiting Defendants from using, accessing, disclosing, or continuing to possess Plaintiff's trade secret information, and (ii) ordering the return of Plaintiff's trade secret information.

2.    On Count Three against Defendants, compensatory damages along with Plaintiff's reasonable attorneys' fees and costs, as well as an order requiring Defendants to disgorge all profits they earned through their various breaches of contract.

3.    On Count Four against Defendants, compensatory damages along with Plaintiff's reasonable attorneys' fees and costs.

4.    On Count Five against Defendants, compensatory damages along with Plaintiff's reasonable attorneys' fees and costs.

5.    On Count Six against Defendants, exemplary and compensatory damages along with Plaintiff's reasonable attorneys' fees and costs.

6.    On Counts One through Seven against Defendants, an order requiring Defendants to disgorge all profits they earned through their unfair, improper and anti-competitive acts, as well as a preliminary and permanent injunction (i) prohibiting Defendants from using, accessing, disclosing, or continuing to possess Plaintiff's trade secret information, (ii) ordering the return of Plaintiff's trade secret information, (iii) mandating full disclosure of all contacts, in native file format if an electronic document or writing, of any type or kind between Defendants and any mobile home park or similar enterprise managed by Plaintiff, including all such contacts with parks or enterprises previously managed by Plaintiff and now managed by Defendants, (iv) forbidding further such contact of any type or kind with any parks or enterprises now under Storz management, (v) mandating full disclosure of all contacts, in native file format if an electronic

1    document or writing of any type or kind between Defendants and any employee of Plaintiff or any

2    park or enterprise then under Plaintiff's management, (vi) mandating full restoration of all files in

3    place in the Storz offices of Defendants while they were employed there, (vi) mandating full

4    inventory identification of every article removed from these offices, either by Defendants or by a

5    person or persons acting under their implied or explicit direction, (vii) mandating the expedited

6    turnover of all cell phone, personal email, and any other records that will support a full and

7    complete investigation of Defendants' disloyal activities, to further include records of all

8    payments made to, and communications with the website service(s) used to create the website

9    associated with "Monolith Properties," and (viii) mandating expedited depositions of each

10   Defendant.

11   7.        Punitive damages as appropriate.

12   8.        On all counts, pre-judgment and post-judgment interest as well as such other and further

13   relief as the Court deems just and proper.

14                                    **JURY DEMAND**

15           Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Storz Management

16   and Plaintiff Storz Realty demand a trial by jury of 8 members on all issues.

17   DATED: January 11, 2018              CHRISTOPHER J. BAKES
                                          ANDREW D. BLUTH
18                                        RYAN MATTHEWS
                                          LEWIS BRISBOIS BISGAARD & SMITH  LLP
19

20

21                                       By:        /s/
                                              _____
22                                            Christopher J. Bakes
                                              Attorneys for Storz Management Company and
23                                            Storz Realty, Inc.

24

25

26

27

28