1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   STORZ MANAGEMENT COMPANY, a          No. 2:18-cv-00068-TLN-DB
     California corporation; STORZ REALTY,
12   INC., a California corporation;
     HERITAGE FUNDING CORPORATION,
13   a California corporation; and HERITAGE      **ORDER**
     FUNDING IV, a California corporation,
14

15                Plaintiffs,

16          v.

17   ANDREW CAREY, an individual; MARK
     WEINER, an individual; JOY KELLY, an
18   individual; NANCY HUGHES, an
     individual, MONOLITH, LLC, a California
19   entity; and MONOLITH PROPERTIES,
     INC., a California corporation,
20

21                Defendants.

22   _____

23          This matter is before the Court on the following motions: Plaintiffs Storz Management

24   Company, Storz Realty, Inc., Heritage Funding Corporation, and Heritage Funding IV's

25   (collectively, "Plaintiffs") Motion to Strike (ECF No. 165); Defendants Mark Weiner, Andrew

26   Carey, Joy Kelly, Nancy Hughes, Monolith, LLC, and Monolith Properties, Inc.'s (collectively,

27   "Defendants") Motion for Partial Summary Judgment (ECF No. 169); and Plaintiffs' Motion for

28   Appointment of Master Regarding Discovery (ECF No. 179).  All the foregoing motions are fully

                                              1

briefed.  For the reasons set forth below, the Court GRANTS in part and DENIES in part Plaintiffs' Motion to Strike (ECF No. 165), DENIES Defendants' Motion for Partial Summary Judgment (ECF No. 169), and DENIES Plaintiffs' Motion for Appointment of Master Regarding Discovery (ECF No. 179).

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Storz Management Company ("SMC") provides RV Park and Mobile Home Park management services.  (ECF No. 155 at 7.)  Plaintiffs Storz Realty, Inc., Heritage Funding Corporation, and Heritage Funding IV are affiliates of SMC, providing services relating to the marketing, sale, and syndication of mobile park homes.  (*Id.*)  Defendants Andrew Carey ("Carey") and Mark Weiner ("Weiner") were SMC's Chief Executive Officer and Chief Financial Officer/Chief Operating Officer, respectively.  (*Id.*)  Plaintiffs allege Carey and Weiner created directly competing companies through "multiple strategies and tactics of deception."  (*Id.* at 2.)  As a result, Plaintiffs terminated Carey and Weiner on December 1, 2017.  (*Id.* at 14.)

Plaintiffs filed the operative Second Amended Complaint ("SAC") on March 17, 2021.  (ECF No. 155.)  Defendants answered.  (ECF Nos. 162–164.)  On April 26, 2021, Plaintiffs filed a motion to strike Defendants' affirmative defenses.  (ECF No. 165.)  Defendants filed a motion for partial summary judgment on May 13, 2021.  (ECF No. 169.)  Plaintiffs filed a motion for appointment of discovery master on February 11, 2022.  (ECF No. 179.)  The Court will address each motion in turn.

## II.   MOTION TO STRIKE AFFIRMATIVE DEFENSES

### A.   Standard of Law

Federal Rule of Civil Procedure ("Rule") 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney—Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  Rule 12(f) motions, however, are "generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal.,*

1    *N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003).  "Ultimately, whether to grant a motion to

2    strike lies within the sound discretion of the district court."  *Id.*  Unless it would prejudice the

3    opposing party, courts freely grant leave to amend stricken pleadings.  *Wyshak v. City Nat'l Bank*,

4    607 F.2d 824, 826 (9th Cir. 1979); *see also* Fed. R. Civ. P. 15(a)(2).

5       In *Wyshak*, the Ninth Circuit stated: "[t]he key to determining the sufficiency of pleading

6    an affirmative defense is whether it gives plaintiff fair notice of the defense."[1]  *Wyshak*, 607 F.2d

7    at 827.  Under the fair notice standard, a defendant is only required to "state the nature and

8    grounds for the affirmative defense" rather than plead a detailed statement of the facts upon

9    which the defense is based.  *Kohler v. Islands Rests., LP*, 280 F.R.D. 560, 564 (S.D. Cal. 2012).

10    "On the other hand, an affirmative defense is legally insufficient only if it clearly lacks merit

11    'under any set of facts the defendant might allege.'"  *Id.* (quotation omitted)).  The pleadings are

12    only required to describe each defense in "general terms" if it gives the plaintiff fair notice of the

13    nature of the defense.  *Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015).  For

14    well-established defenses, merely naming them may be sufficient.  *See Ganley v. Cnty. of San*

15    *Mateo*, No. C06-3923 TEH, 2007 WL 902551, at *2 (N.D. Cal. Mar. 22, 2007).

16       B.    Analysis

17       Plaintiffs request the Court strike certain affirmative defenses because they are either

18    inappropriate or Defendants failed to plead sufficient facts to support them.[2]  (ECF No. 166.)  As

19    a preliminary matter, Defendants filed three separate answers.  (ECF Nos. 162–164.)  The

20    affirmative defenses in each answer are identical except for one additional affirmative defense in

21

22    [1]     This Court and others in this district apply the *Wyshak* fair notice standard to the analysis

23    of affirmative defenses rather than the more stringent standard set forth in *Bell Atlantic Corp. v.*
    *Twombly*, 550 U.S. 544 (2007) and clarified by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *See, e.g.*,

24    *Peacock v. Pabst Brewing Co., LLC*, No. 2:18-CV-00568-TLN-CKD, 2022 WL 446201, at *2
    (E.D. Cal. Feb. 14, 2022).

25    [2]     The parties disagree as to whether Plaintiff adequately shows prejudice.  (ECF No. 166 at

26    4; ECF No. 168 at 2.)  Although motions to strike affirmative defenses are sometimes not granted
    absent prejudice to the plaintiff, the text of Rule 12(f) does not suggest prejudice is required.

27    *Peacock*, 2022 WL 446201, at *4.  Because Plaintiff's arguments about prejudice were not
    material to the Court's ruling, the Court need not and does not address those arguments herein.

28

Defendants Monolith, LLC and Monolith Properties, Inc.'s answer — "lack of originality" brought as affirmative defense 22.  (ECF No. 163 at 22.)  Defendants Monolith, LLC and Monolith Properties, Inc.'s affirmative defense 23 — "reservation of affirmative defenses" — is listed as affirmative defense 22 in the other Defendants' answers.  Because Plaintiffs brought a single motion to strike and the affirmative defenses are virtually identical, the Court will address the challenged affirmative defenses from all three answers collectively.

### i.      Affirmative Defenses 1 and 11

Plaintiffs argue Defendants' first and eleventh affirmative defenses, which allege failure to state a claim, do not constitute proper affirmative defenses.  (ECF No. 166 at 5.)  In opposition, Defendants argue Rule 12(h)(2) expressly permits a party to assert the defense of "failure to state a claim."  (ECF No. 168 at 4.)

The Court agrees with Plaintiffs.  "Failure to state a claim is not a proper affirmative defense but, rather, asserts a defect in [plaintiffs'] prima facie case . . . [and] is more properly brought as a motion."  *Powell v. Union Pac. R. Co.*, 864 F. Supp. 2d 949, 962–63 (E.D. Cal. 2012); *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense.").  Accordingly, the Court GRANTS Plaintiffs' motion to strike Defendants' first and eleventh affirmative defenses without leave to amend.

### ii.      Affirmative Defense 22[3]

Plaintiffs argue Defendants' reservation of affirmative defenses should be stricken as redundant of Rule 15.  (ECF No. 166 at 7.)  The Court agrees that the reservation of future affirmative defenses is not properly brought as an affirmative defense.  "If at some later date defendants seek to add affirmative defenses, they must comply with Rule 15 of the Federal Rules of Civil Procedure.  Defendants cannot avoid the requirements of Rule 15 simply by reserving the

---

[3]      This refers to affirmative defense 22 as alleged in Defendants Mark Weiner, Andrew Carey, Nancy Hughes, and Joy Kelly's answers.  As discussed above, the corresponding affirmative defense in Defendants Monolith, LLC and Monolith Properties, Inc.'s answer is numbered affirmative defense 23.

1  right to amend or supplement their affirmative defenses." *Devermont v. City of San Diego*, 12-

2  cv-01823, 2013 WL 2898342, at *25 (S.D. Cal. June 11, 2013).  Therefore, the Court GRANTS

3  Plaintiffs' motion to strike Defendants' affirmative defense alleging reservation of affirmative

4  defenses without leave to amend.

5         *iii.*  *Affirmative Defenses 2, 3, 16, and 17*

6     Plaintiffs next move to strike Defendants' second affirmative defense (unclean hands),

7  third affirmative defense (estoppel, waiver, and/or laches), sixteenth affirmative defense (laches),

8  and seventeenth affirmative defense (consent).  (ECF No. 166 at 5–7.)  Plaintiffs argue

9  Defendants failed to plead sufficient facts to support these affirmative defenses.  (*Id.*)  In

10  opposition, Defendants argue Plaintiffs previously asserted similar affirmative defenses in

11  response to a counterclaim.  (ECF No. 168 at 5–10.)

12     Although each of these affirmative defenses is stated in a brief manner using general

13  terms, these are well-established defenses whose application is typically self-explanatory (and

14  some of which are explicitly listed in Rule 8(c)(1)).  As such, the Court finds the affirmative

15  defenses put Plaintiffs on sufficient notice to survive a motion to strike.  *See Springer v. Fair*

16  *Isaac Corp.*, No. 14-CV-02238-TLN-AC, 2015 WL 7188234, at *4 (E.D. Cal. Nov. 16, 2015)

17  (denying a motion to strike affirmative defenses of estoppel, waiver, laches, and unclean hands

18  even though they contained no factual support and were alleged in general terms).  The Court also

19  notes that it seems disingenuous for Plaintiffs to contest these affirmative defenses when they

20  alleged the same affirmative defenses in vague, general terms and with no factual support in their

21  answer to Defendants' counterclaims.  (*See* ECF No. 28 at 13.)  Accordingly, the Court DENIES

22  Plaintiffs' motion to strike affirmative defenses 2, 3, 16, and 17.

23         *iv.*  *Affirmative Defenses 4, 5, 6, 7, and 22*[4]

24     Lastly, Plaintiffs move to strike Defendants' fourth affirmative defenses (uncertainty),

25  fifth affirmative defense (failure to take reasonable safety measures), sixth affirmative defense

26

27    [4]  This refers to affirmative defense 22 as alleged in Defendants Monolith, LLC and
Monolith Properties, Inc.'s answer.

28

1  (information from public and/or other sources), and seventh affirmative defense (lack of

2  independent value), as well as Defendants' Monolith LLC and Monolith Properties, Inc.'s twenty-

3  second affirmative defense (lack of originality), as improper because they concern elements of

4  Plaintiffs' claims.  (ECF No. 166 at 6–7.)  In opposition, Defendants argue Plaintiffs fail to cite

5  authority establishing the affirmative defenses are improper and fail to demonstrate any prejudice

6  from allowing such affirmative defenses to stand.  (ECF No. 168 at 8.)

7       The Court agrees with Defendants.  The discretion of whether to grant a motion to strike is

8  soundly with the Court.  *Peacock*, 2022 WL 446201, at *4.  Plaintiffs fail to adequately develop

9  their arguments or provide sufficient authority to support dismissing these affirmative defenses.

10  *Id.*  Therefore, the Court DENIES Plaintiffs' motion to strike affirmative defenses 4, 5, 6, 7, and

11  Defendants Monolith LLC and Monolith Properties, Inc.'s affirmative defense 22.

12       **III.    MOTION FOR PARTIAL SUMMARY JUDGMENT**

13            A.    Standard of Law

14       Summary judgment is appropriate when the moving party demonstrates no genuine issue

15  of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.

16  R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary

17  judgment practice, the moving party always bears the initial responsibility of informing the

18  district court of the basis of its motion, and identifying those portions of "the pleadings,

19  depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

20  which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.*

21  *Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof

22  at trial on a dispositive issue, a summary judgment motion may properly be made in reliance

23  solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at

24  324 (internal quotation marks omitted).  Indeed, summary judgment should be entered against a

25  party who does not make a showing sufficient to establish the existence of an element essential to

26  that party's case, and on which that party will bear the burden of proof at trial.

27       If the moving party meets its initial responsibility, the burden then shifts to the opposing

28  party to establish that a genuine issue as to any material fact does exist.  *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the motion, the court examines pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits.  Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence of the opposing party is to be believed and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.* at 587.

1          B.     Analysis

2          Defendants move for summary judgment as to Claim Nine (alleging fraud against Carey

3 and Claim Ten (alleging fraud against Weiner).[5]  (ECF No. 169-1.)  In Claims Nine and Ten,

4 Plaintiffs allege Carey and Weiner made misrepresentations when they signed their employment

5 agreements without disclosing any current or prospective investments in mobile park homes.

6 (ECF No. 155 at 30–33.)  In their motion for summary judgment, Defendants argue the fraud

7 claims fail as a matter of law because there is no evidence of misrepresentation at the time of

8 signing employment agreements.  (ECF No. 169-1 at 8.)  The Court will first address the relevant

9 factual background and then the parties' arguments.

10               *i.     Relevant Facts*[6]

11         Carey signed an employment agreement on March 18, 2016, with an effective date of July

12 1, 2015.  (PMF at 2; DSUF ¶ 1.)  Weiner signed an employment agreement on November 1,

13 2016, with conflicting effective dates, July 1, 2016, according to the preamble, and September 9,

14 2016, according to ¶ 1.2. (DSUF ¶ 5; PMF at 5.)  The agreements had identical disclosure

15 requirements generally requiring disclosure of actual or potential investments in mobile home

16 parks.  (PMF at 11.)  Exhibit C of the agreements asked for a "complete list of [Defendants'] . . .

17 current and prospective investments existing as of the date of this agreement."  (ECF No. 174-1 at

18 23; ECF No. 174-2 at 22.)  Both Weiner and Carey indicated they had "no investments" and

19 signed.  (ECF No. 174-1 at 23; ECF No. 174-2 at 22.)

20         According to Plaintiffs, Carey and Weiner were operating an entity called Monolith since

21 at least December 2014 and continuing through their terminations on December 1, 2017.  (PMF ¶

22 6.)  Plaintiffs contend Monolith was created to explore potential investments in mobile home

23

24   [5]      As a threshold argument, Plaintiffs contend Defendants' motion is premature as discovery
25 has not yet closed and depositions of Carey and Weiner have not been taken.  (ECF No. 172 at 2.)
   Because the Court denies Defendants' motion for summary judgment on the merits, it need not
26 and does not address Plaintiffs' prematurity arguments.

27   [6]      The following facts are taken from Plaintiffs' Material Facts ("PMF") (ECF No. 173) and
   Defendants' Statement of Undisputed Facts ("DSUF") (ECF No. 169-2).
28

parks. (*Id.*; ECF No. 174-20.) Plaintiffs cite numerous emails from Carey and Weiner in which they refer to the entity under various names, including Monolith Partners LLC, Monolith Properties LLC, Monolith LLC, and in some communications just "Monolith." (*See, e.g.*, ECF No. 174-7 at 3; ECF No. 174-8 at 2; ECF No. 174-10 at 2; ECF No. 174-13 at 3; ECF No. 174-14 at 2; ECF No. 174-15 at 2.) Plaintiffs allege Defendants concealed the existence of Monolith entities from the SMC board of supervisors. (PMF ¶ 7.)

As to Carey specifically, Plaintiffs assert SMC, through its broker affiliate SRI, was hired by Scott Blasi to sell a mobile home park, Loomis MHV. (ECF No. 155 at 9.) Carey was the broker-agent responsible for marketing the property. (*Id.*) On March 3, 2016, Carey presented Blasi an offer from Tim Wright and Zach Koucos, which he endorsed in a promotional tone. (PMF ¶ 12; ECF No. 174-22.) On March 4, 2016, Carey presented Blasi with an offer by SMC board member Jeffrey Hunter, which was not endorsed with an equivalent promotional tone. (PMF ¶ 12.) By June 1, 2016, Carey disclosed to Blasi, that he would be taking an investment position in the Wright-Koucos buyer group. (*Id.*) According to Plaintiffs, Carey knew he was going to eventually join the Wright- Koucos offer by at least March 18, 2016, when he signed the employment agreement. (*Id.*) Plaintiffs state Carey failed to disclose his dual role as broker and buyer to SMC, had rejected competing offers, and the prevailing offer was one in which he was participating. (*Id.*; ECF No. 172 at 9–10.) As the agent in the transaction, Carey received a sales commission of $44,900. (ECF No. 173 at 15.)

As to Weiner specifically, Plaintiffs contend Weiner was involved with Monolith from 2014 through at least 2017. (PMF ¶ 6.) Weiner was also involved with the Loomis MHV deal. (ECF No. 173 at ¶ 7, Plaintiffs' Responses and Objections to DSUF ("PRO").) Wright and Koucos asked Weiner to file the Articles of Organization for Loomis MHV, LLC, the entity which purchased Loomis MHV. (ECF No. 169-1 at 10.) Around May 2016, Wright and Koucos offered both Carey and Weiner an opportunity to invest in the Loomis MHV purchase. (PRO ¶ 8; ECF No. 169-5 at 3.) Weiner declined and passed the opportunity on to his family who acquired a 10% membership interest through their family trust. (PRO ¶ 8; ECF No. 169-5 at 3.) Weiner acted on behalf of the Weiner family trust under a limited power of attorney. (ECF No. 169-5 at

4.)  After the sale of Loomis MHV, Weiner accepted half of Carey's broker fee for services rendered.  (PMF ¶ 14.)  Both Carey and Weiner identified "Monolith" as taking a leading role in the Loomis MHV transaction, as described in Monolith promotional materials.  (PMF ¶ 8; ECF No. 174-20.)

> ii.      Analysis

"The elements of fraud . . . are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *Oxford v. Sara Lee Baking Group, Inc.*, No. Civ F 05-1140 AWI LJO, 2007 WL 781869, at *24 (E.D. Cal. Mar. 13, 2007).  Defendants' motion for summary judgment is based solely on Plaintiff's failure to satisfy the first element — misrepresentation.  (ECF No. 169-1 at 2–3, 8–11.)  The Court will address Defendants' arguments with respect to Carey (Claim Nine) and Weiner (Claim Ten) in turn.

> a.      Claim Nine against Carey

Defendants argue the "Monolith" entity that is alleged in the SAC refers to Monolith Partners, LLC, which had been dissolved in January 2016 — 3 months before Carey signed the new employment agreement with SMC.  (ECF No. 169-1 at 9.)  Defendants also argue there is no admissible evidence Carey concealed his alleged acquisition of the Loomis MHV at the time he signed his new employment agreement with SMC because his only involvement was in his role of providing broker services to SMC's affiliate broker, SRI, which was marketing the property for sale.  (*Id.*)  Defendants contend it was not until months later, around June 1, 2016, that the buyers of Loomis MHV offered Carey the opportunity to invest with the group.  (*Id.* at 10.)

The Court finds that Plaintiffs sufficiently established a genuine issue of material fact regarding whether Carey made a misrepresentation when signing his new employment agreement with SMC on March 18, 2016.  The numerous emails provided creates at the very least a reasonable inference that between 2014–2017, Defendants were continuously operating a competing mobile home park acquisition company, which they referred to as "Monolith" in various forms.  (ECF No. 172 at 5–7.)  Based on the evidence before the Court and giving Plaintiffs the benefit of all reasonable inferences, a reasonable jury could find that Carey intended

to invest in the Loomis MHV at the time he signed his employment agreement such that he should have disclosed that intention.  Accordingly, the Court DENIES Defendants' motion for summary judgment as to Claim Nine against Carey.

*b.   Claim Ten against Weiner*

Defendants argue while Weiner organized Loomis MHV, LLC, he never invested in the LLC, never held a membership interest, or acted as manager.  (ECF No. 169-1 at 10.)  Defendants further argue Weiner declined to join the Wright-Koucos offer and therefore there was nothing to disclose regarding Loomis MHV on Exhibit C of the employment agreement.  (*Id.*)  Defendants argue that "nothing in Exhibit C [ ] requires Weiner to disclose investments made by his parents or their family trust."  (*Id.*)

The Court finds that Plaintiffs sufficiently established a genuine issue of material fact regarding whether Weiner made a misrepresentation when signing his new employment agreement with SMC on November 1, 2016.  According to Appendix A of the employment agreement, "Employee shall disclose each and every mobile home park(s) in which he and/or his business enterprise has (or have) participated, will participate, invested, or will invest."  (ECF No. 155-2 at 16.)  Although Weiner did not have an ownership interest in Loomis MHV, LLC, there is evidence that he organized the entity, acted on behalf of his family's trust to purchase a 10% interest, and ultimately collected a broker fee for the sale.  Plaintiffs therefore have sufficiently established a genuine issue of material fact regarding whether these actions constitute "participation" within the meaning of the terms of the employment agreement and also whether the Weiner Family Trust is his "business enterprise" within the meaning of the express terms of the employment agreement.  Therefore, the Court DENIES Defendants' motion for summary judgment as to Claim Ten against Weiner.

## IV.   MOTION FOR APPOINTMENT OF SPECIAL MASTER

Plaintiffs argue the Court should appoint a special master to supervise discovery based on the complexity of the case, Defendants' failure to meaningfully respond to numerous discovery requests, and issues regarding metadata of thousands of pages of documents.  (ECF No. 179-1 at 6.)  In opposition, Defendants argue Plaintiffs' motion should be denied because Plaintiffs have

1   not shown there are pretrial matters that could not be effectively and timely addressed by the

2   Court.  (ECF No. 180 at 5–6.)

3        Under Rule 53(a)(1)(C), a court may appoint a special master to "address pretrial and

4   posttrial matters that cannot be effectively and timely addressed by an available district judge or

5   magistrate judge of the district."  Fed. R. Civ. P. 53(a)(1)(A)–(a)(1)(C).

6        Plaintiffs fail to persuade the Court to appoint a special master in this case.  The Court has

7   effectively and timely ruled on multiple discovery disputes in this case thus far.  (*See* ECF Nos.

8   20, 51, 71, 90, 107, 125, and 151.)  If there is a future discovery dispute in this civil action,

9   Plaintiffs should first attempt to communicate with Defendants to resolve the dispute.  If attempts

10  to resolve a discovery dispute fails, Plaintiffs should then file a motion requesting the Court

11  address the matter.  To the extent Plaintiffs seek to use a special master to "relitigat[e] discovery

12  matters already decided," such a motion is improper.  *Stone Brewing Co., LLC v. MillerCoors*

13  *LLC*, No. 3:18-CV-00331-BEN-LL, 2021 WL 4442177, at *2 (S.D. Cal. Sept. 28, 2021).

14       **V.    CONCLUSION**

15       For the foregoing reasons, the Court GRANTS in part and DENIES Plaintiffs' Motion to

16  Strike.  (ECF No. 165.)  The Court STRIKES Defendants' first and eleventh affirmative defenses

17  ("failure to state a claim"), Defendants Mark Weiner, Andrew Carey, Nancy Hughes, and Joy

18  Kelly's twenty-second affirmative defense ("reservation of affirmative defenses"), and

19  Defendants Monolith, LLC and Monolith Properties, Inc.'s twenty-third affirmative defense

20  ("reservation of affirmative defenses").  The motion is DENIED in all other respects.

21       The Court also DENIES Defendants' Motion for Summary Judgment (ECF No. 169) and

22  DENIES Plaintiffs' Motion for Appointment of Discovery Master (ECF No. 179).  The parties

23  shall file a joint status report not later than sixty days from the electronic filing date of this Order.

24       IT IS SO ORDERED.

25  DATED:  JUNE 15, 2022

26

27  _____
    Troy L. Nunley
28  United States District Judge